IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>　　　　Plaintiff,<br>　v.<br><br>UNITED STATES FOREST SERVICE,<br><br>　　　　Defendants.<br>_____/ | No. C 05-2220 SI |
| ENVIRONMENTAL PROTECTION AND INFORMATION CENTER, et al.,<br><br>　　　　Plaintiffs,<br>　v.<br><br>UNITED STATES FOREST SERVICE,<br><br>　　　　Defendant.<br>_____/ | No. C 05-2227 SI |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND VACATING PRELIMINARY INJUNCTION**

On December 9, 2005, the Court heard argument on defendant's motion to dismiss this case as moot and to vacate the Court's June 27, 2005, preliminary injunction. Having carefully considered the parties' arguments, and for good cause appearing, the Court hereby GRANTS IN PART defendant's motion to dismiss, and VACATES the preliminary injunction.

**BACKGROUND**

During the late summer of 2004, the Sims Fire burned approximately 4,030 acres of the Six Rivers

National Forest in northern California. In January 2005, defendant, the United States Forest Service, proposed to log some of the trees killed by the fire. After receiving comments from the public, the Forest Service issued a decision memorandum on May 17, 2005, authorizing the Sims Fire Salvage Project in selected areas of the Six Rivers National Forest.

Plaintiffs, Forest Service Employees for Environmental Ethics ("FSEEE") and the Environmental Protection and Information Center ("EPIC"), brought suit in early June 2005, seeking an injunction against the proposed timber sale. Plaintiffs claimed that the sale would result in the logging of 57.31 acres of critical habitat for the northern spotted owl, a threatened species, and that the Forest Service had failed to properly conduct an environmental assessment, as required by the National Environmental Policy Act ("NEPA"). When plaintiffs moved for a preliminary injunction, the Forest Service urged the Court to rule quickly, claiming that the salvage effort could not go forward if it did not begin before June 30, 2005.

In a June 27, 2005, order, this Court ruled in favor of plaintiffs and issued a preliminary injunction, enjoining the Forest Service from awarding a contract for the Sims Fire Salvage Project and from harvesting any trees pursuant to the May 17, 2005, decision memorandum. On July 15, 2005, the Forest Service rejected all bids on the timber sale contract for the Sims Fire Salvage Project. Two weeks later, the Forest Service withdrew its May 17, 2005, decision memorandum that had approved the sale.

The Forest Service now moves to vacate the preliminary injunction, claiming that the case has become moot because the timber sale is no longer economically feasible. Plaintiffs oppose defendant's motion, claiming that defendant's voluntary abandonment of the timber sale does not deprive the Court of jurisdiction over the matter.

**LEGAL STANDARD**

"A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (quoting *Hall v. Beals*, 396 U.S. 45, 48, 90 S. Ct. 200 (1969)). When mootness is based upon "a defendant's voluntary cessation of a challenged practice," however, federal courts may continue to exercise jurisdiction over the matter. *Friends of the Earth, Inc. v. Laidlaw Envt'l*

*Serv. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000). In such a case, the party asserting mootness must meet a "heavy burden." *Id.* "In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S. Ct. 361 (1968)).

## DISCUSSION

With the exception of FSEEE's challenge to the Forest Service regulations implemented under the Forest Service Decisionmaking and Appeals Reform Act, the Court finds that there is no longer enough of a case or controversy to proceed with this litigation. The Court will therefore dismiss plaintiffs' challenge to defendant's proposed timber sale as moot and vacate its preliminary injunction order.

### 1.    Plaintiffs' Challenge to the Timber Sale

Defendant argues that the case is moot because this Court can no longer grant effective relief given that defendant has withdrawn the challenged timber sale and will not reoffer it. In support of this argument, defendant claims that the timber sale is no longer economically feasible – given the steep terrain, the deterioration of the trees, and the distance to the nearest mill, defendant asserts that the cost of logging the trees now exceeds the expected revenue from the timber. This argument is consistent with defendant's position, which it has held from the outset of this litigation, that the timber sale would not be possible if logging did not begin before June 30, 2005.[1] Plaintiffs contest defendant's assertions, and claim that the timber sale still has some potential economic viability.

Having considered the competing claims of the parties, the Court finds that defendant has met its burden of establishing that the timber sale cannot "reasonably be expected to recur.'" *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. at 708. Most importantly, even if the timber sale were to retain some economic viability,

---

[1] The Forest Service's actions are also consistent with its position. When the Forest Service rejected all bids and withdrew its May 17, 2005, decision memorandum, it explicitly stated that the timber sale would not be reoffered. July 29, 2005, Decl. of James A. Coda, Exh. 3.

the Forest Service has officially withdrawn its memorandum decision authorizing the sale. Thus, any subsequent decision to proceed with the sale would need to pass through the administrative process once again. If this were to occur, the basis for the decision, and the basis for a challenge to that decision, could change. Indeed, given changes to Forest Service regulations that have occurred after the Forest Service issued its decision memorandum, a court reviewing a future sale of the trees covered by this Court's preliminary injunction would likely face a different lawsuit and administrative record that what this Court has considered. *See Earth Island Institute v. Pengilly*, 375 F. Supp. 2d 994 (E.D. Cal. 2005) (finding Forest Service regulations governing administrative process promulgated under ARA to be invalid and severing regulations).

Putting aside the procedural and regulatory differences that a new Forest Service decision to institute a new sale would create, the Court finds that it is unreasonable to presume that any such decision would be reached in the first place. The economic arguments presented by defendant make a compelling case that the Sims Fire sale is no longer economically feasible. Most convincing to the Court is the evidence defendant has offered concerning interest in the sale from timber companies. Even before this litigation was commenced, the timber industry was already encouraging the Forest Service to act quickly, estimating a dramatic declination in value of the timber should the sale be delayed. This view is documented in a February 15, 2005, letter from the American Forest Resource Council to the Lower Trinity District Ranger. Supp. Decl. of Roy E. Bergstrom in Support of Def. Mot. ("Supp. Bergstrom Decl."), Exh 3. This letter expressed the view that "there will be a very short window this next field season to harvest non-stained fire killed timber on this project." *Id.* The letter also anticipated that "[c]ontinued delays . . . could result in a $600,000 to $800,000 reduction in stumpage receipts." *Id.* In addition, only two timber companies bid on the original sale. Before this Court's preliminary injunction issued, both of these timber companies shared defendant's view that after the 2005 season the Sims Fire sale would no longer have enough value to attract bids. *Id.* at ¶ 14.

Defendant has also argued convincingly that the economic value of the trees will decline dramatically between 2005 and 2006. Defendant anticipates, based on a 1992 study by E.C. Lowell, that the trees will have suffered an average 24.5% deterioration in volume as of May 16, 2006, the start of the 2006 operating season. *Id.* at ¶¶ 12-13. Plaintiff contests this figure, arguing that a 10% deterioration rate is more appropriate based on a 1996 study by the same author. But defendant consulted with that author in reaching its conclusion

4

that the 1992 study was more appropriate for the characteristics of the Sims Fire than the 1996 study. *Id.* Defendant has also presented convincing evidence to the Court that the value of the lumber will decline much more rapidly than the rate of deterioration suggests. According to defendant, the majority of the deterioration of the trees will occur to the most valuable parts of the tree – the "sapwood" – causing the dead trees to lose value at a much faster rate than their rate of deterioration. Decl. of Dave Schultz in Support of Def. Mot. ("Schultz Decl."), ¶ 11. Consistent with this position, the February 15, 2005, letter from the American Forest Resource Council argues that delay could cause the quality of lumber to be downgraded from "shop grade" to "structural grade." Administrative Record ("AR") 393-394. Finally, defendant argues that the unique characteristics of the Sims Fire site, including its steep slopes, limited road access, and distance from saw mills, all reduce the potential value of the salvageable timber. Shultz Decl., ¶ 9.

FSEEE makes two non-economic arguments as to why the timber sale will still be feasible next year. First, FSEEE points to anecdotal evidence of three occasions on which the Forest Service conducted a timber salvage sale years after a fire had occurred. All three of these occasions occurred after the Biscuit Fire in southwest Oregon, with the sales taking place two or three years after the fire. *Id.* at ¶¶ 10-11. Given that significant effect that location can have on tree deterioration and operating expenses, *see* Bergstrom Decl., ¶¶ 12, 17, 21-22, Schultz Decl., ¶ 7, the Court does not find FSEEE's anecdotal evidence convincing. Second, FSEEE notes that the Sims contract did not require logging to be completed until March 31, 2007, undermining defendant's contention that the sale must be completed as quickly as possible. *Id.* at ¶ 12. The Court, however, does not find that March 31, 2007 contract termination date to be particularly significant. Defendant has explained that the termination date did not indicate that logging was likely to occur during 2006; rather, the date was intended to provide additional time to finish removing logs, should weather or some other obstacle have prevented the logging from being completed in 2005. *See* Decl. of Roger Moore in Support of Def. Mot. at ¶¶ 4-5.

Finally, EPIC brings an additional reason why the sale could still proceed: the Forest Service's stated desire to "set the stage for reforestation" by logging the trees. EPIC Oppo. Br. at 7. The Court finds that this is not a sufficient reason, given that "[t]he proposed reforestation project . . . can, and is expected to, proceed without the salvage project or the removal of any trees." Supp. Decl. of Bergstrom in Support of Def. Mot.,

5

¶ 23.

Based on the above evidence, the Court finds that defendant has met its burden of establishing that the timber sale cannot reasonably be expected to recur. Accordingly, the Court will DISMISS plaintiffs' challenge to the timber sale as moot.

## 2. Vacatur of Preliminary Injunction

Given that plaintiffs' challenge to the Sims Fire Salvage Sale is moot, defendant also moves to vacate the Court's June 27, 2005, preliminary injunction. Ordinarily, when a case becomes moot, the appropriate action is to vacate the judgment and dismiss. *United States v. Munsingwear*, 340 U.S. 36, 39 (1950).[2] This rule is by no means absolute; a Court should dispose of a moot case "in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 24 (1994) (internal quotation marks and alterations omitted). The primary factor in this analysis is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* The public interest is also an important factor. *Id.* at 26-27.

Plaintiffs use these principles to argue that the Court's preliminary injunction should not be vacated because the defendant's voluntary action caused this case to become moot. According to plaintiffs, allowing the defendant's withdrawal of the decision memorandum to moot this case would permit defendant to manipulate the Court's jurisdiction and to avoid having an adverse ruling in existence. *See Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995) ("A dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal.").

Despite plaintiffs' arguments, the Court agrees with defendant that the preliminary injunction should be vacated. Most importantly, the Court finds that the primary reason that this case has become moot is "happenstance." *See Munsingwear*, 340 U.S. at 40; *U.S. Bancorp*, 513 U.S. at 25 (where review of a ruling is frustrated by "happenstance," the adverse party "ought not in fairness be forced to acquiesce in the

---

[2]*Munsingwear* concerned a case that became moot after the district court had entered final judgment. Plaintiffs have provided the Court with no reason why vacatur would be less appropriate where a case becomes moot before a final judgment is entered.

6

judgment"). As discussed above, this case has become moot through the passage of time and the corresponding effect on the economic feasibility of Sims Fire sale. Although defendant may strategically benefit from the vacatur of this Court's preliminary injunction, the Court does not believe that defendant is driven entirely by a desire to "dodge the bullet" of this Court's prior order. *See* EPIC Oppo. Br., at 10.

In addition, while the public may have an interest in a court decision on the subject of the Forest Service's use of categorical exemptions in its timber sales, the Court does not find that interest particularly strong in this case. As an initial matter, the Court's prior order granted only a preliminary injunction. The Court therefore did not consider the entirety of plaintiffs' case on the merits, but was motivated in part out of a desire to preserve the status quo. Moreover, the preliminary injunction was brought before the Court on an extremely expedited briefing schedule. Although plaintiffs' complaints were filed on June 1, 2005, briefing was not complete on the preliminary injunction motion until June 20, 2005, and the hearing was held on June 22, 2005. Thus, the Court had less than a week to read the briefing, consider the parties arguments, and review the more than 3,000 pages of administrative record. Given that the Court's ruling was not, and was not intended to be, a comprehensive analysis of the arguments presented, the Court finds that the public interest in this case is not particularly compelling.

The Court finds that no equitable considerations warrant denying defendant's motion to vacate the preliminary injunction. Accordingly, the Court VACATES its preliminary injunction.

### 3.    FSEEE's Challenge to ARA Regulations

Plaintiff FSEEE's remaining argument is that this case is not moot because it still has pending a challenge to defendant's regulations implementing the Forest Service Decisionmaking and Appeals Reform Act ("ARA"), Pub. L. No. 102-381, Title III § 322, 106 Stat. 1419 (1992). FSEEE raised this challenge in its first amended complaint, which was filed on July 28, 2005, a month after the preliminary injunction issued in this case. The Court agrees with FSEEE that its challenge to the regulations is not moot,[3] but STAYS any proceedings related to this issue pending the resolution of an appeal in a related case in the Ninth Circuit.

---

[3] FSEEE's amended complaint also challenges the Sims Fire Salvage Project because the Forest Service relied on the ARA regulations to exempt the project from administrative review. For the reasons discussed above, this "as applied" challenge to the Forest Service's action is moot.

7

The ARA provides that the Secretary of Agriculture "shall establish a notice and comment process for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans." ARA, Pub. L. No. 102-381, Title III § 322(a). The ARA also provides for a right of appeal of a Forest Service decision, and for an automatic stay of Forest Service action during appeal. *Id.* at §§ (c), (d), (e). Forest Service regulations, however, promulgated at 36 C.F.R. Part 215, exempt certain projects from these provisions. *See, e.g.*, 36 C.F.R. §§ 215.4(a) (notice and comment procedures do not apply to "projects and activities which are categorically excluded from documentation in an environmental impact statement (EIS) or environmental assessment (EA)"), 215.10(a) (allowing Chief and Associate Chief of Forest Service to delegate the determination that an emergency situation exists to the Regional Foresters), 215.12(f) (excluding from appeal procedures "decisions and actions that have been categorically excluded from documentation in an EA or EIS"), and 215.20(b) ("Decisions of the Secretary of Agriculture or Under Secretary, Natural Resources and Environment are not subject to the notice, comment, and appeal procedures set forth in this part."). FSEEE challenges these Forest Service regulations as *ultra vires* to the ARA.

To the extent that FSEEE challenges the Forest Service's regulations, defendant agrees that challenge presents a live controversy. Nonetheless, the Court will stay any proceedings related to that challenge because of the district court's decision in *Earth Island Institute v. Pengilly*, 375 F. Supp. 2d 994 (E.D. Cal. 2005). In *Earth Island*, the Eastern District of California found a number of the Forest Service's regulations were invalid, and severed them from the remainder of the regulations. *Id.* at 1011. According to both parties, the Forest Service has appealed that decision to the Ninth Circuit.

It is the Court's understanding that the *Earth Island* decision directly addressed all the regulations that FSEEE challenges here. Given that the Ninth Circuit's ruling will be binding on this case, unless FSEEE brings the Court's attention to specific Forest Service regulations that it is challenging that were not addressed by the *Earth Island* decision, the Court will STAY this action pending the Ninth Circuit's decision. If FSEEE intends to challenge regulations not covered by the *Earth Island* decision, it should notify the Court immediately.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion

8

to dismiss[4] with respect to plaintiffs' challenge to the Forest Service's authorization of the Sims Fire sale, and VACATES its June 27, 2005, preliminary injunction order (Docket No. 27). The clerk shall close the file in No. 05-2227.

The Court DENIES defendant's motion to dismiss with respect to FSEEE's *ultra vires* challenge to the Forest Service regulations at 36 C.F.R. Part 215. The Court further STAYS this action pending the Ninth Circuit's decision in the appeal of *Earth Island Institute v. Pengilly*, 375 F. Supp. 2d 994 (E.D. Cal. 2005). **The parties are directed to inform the Court promptly when such a decision issues. In addition, the parties are directed to file a Joint Status Report every 60 days from the date this order issues, informing the Court of the current status of the appellate process.**

**IT IS SO ORDERED.**

Dated: January 9, 2006

SUSAN ILLSTON
United States District Judge

---

[4] Defendant's motion to dismiss is Docket No. 40 in Case No. 05-2220 and Docket No. 41 in Case No. 05-2227.